IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Lawrence Jay Greer, | ) | Case No.: 04-02582-BGC-13 |
| | ) | |
| Debtor. | ) | |
| | | |
| Lawrence Jay Greer, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | A. P. No.: 04-00232 |
| | ) | |
| Countrywide Home Loans, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

The matters before the Court are:

1. The Motion to Set Aside Dismissal filed by the Debtor on July 19, 2004;

2. The Amended Motion to Set Aside Dismissal filed by the Debtor on July 27, 2004;

3. The Order granting Motion to Set Aside Dismissal entered by the Court on August 5, 2004;

4. The Motion to Amend Order and Reimpose Automatic Stay filed by the Debtor on August 23, 2004;

5. The Complaint for Violation of Automatic Stay and to Set Aside a Foreclosure Sale filed by the Plaintiff-Debtor on December 6, 2004; and

6. The Answer filed by the Defendant on December 28, 2004;

After notice, a hearing was held on January 12, 2005. Appearing were: David Hodges for the Plaintiff-Debtor; and Jim Greer for Mike Bybee for William McFadden, the attorney for the movant.

## I. Background

On May 13, 2004, Countrywide Home Loans, Inc. filed an <u>Objection to Confirmation or in the Alternative Motion for In Rem Stay Relief from Automatic Stay</u>. The pertinent part of the request read:

> Movant requests that confirmation be denied and relief from stay be granted **IN REM** and as to any future bankruptcy filings by Debtor or such stay be terminated, nulled, modified a conditioned as to this or any future filings so as to allow movant to foreclose in accordance with the provisions of its mortgage and Alabama Law....

<u>Objection to Confirmation or in the Alternative Motion for In Rem Stay Relief from Automatic Stay</u> filed May 13, 2004, at 2.

A hearing on that motion was held on July 6, 2004. The following is an unofficial transcription of that hearing. Speaking were Mr. Hodges, debtor's counsel, Ms. Pickett, movant's counsel, Mr. King, the attorney for the Chapter 13 trustee, and the Court.

| | |
|---|---|
| Hodges: | Judge you will not hear me say this often. But I think I have run out of things to offer on behalf of Mr. Greer. I was told that... We submitted the $400 belatedly, but the $400 we represented to the Court last time that we had. That was received on 6/23. I was told by Mr. Greer about that same time that he had mailed a payment directly to the Trustee. I'm pretty sure he had the new correct address. I can't be 100% certain of that, nor am I 100% certain that he was informed about this specific date. Although frankly I feel like that he was. I have not gone down easily on this case Your Honor, but I'm not sure I've got anything positive to add. |
| Judge: | The trustee has ... It's also set for confirmation for the record, but the Trustee has asked that it be dismissed and that the debtor be barred for 180 days. Countrywide has objected to confirmation and also asked for in rem relief as to their property. |
| Hodges: | And I, you know, my client had consented to in rem relief as far as Countrywide goes. I mean, he knew that this was his last shot. I'd rather have the in rem order entered than the 180 day order. Because if we do that and we work |
| Judge: | I'd expect Ms. Pickett would agree with that. |
| Pickett: | Absolutely. |
| Hodges: | I'm sorry Judge I didn't hear that. |

2

Case 04-00232-BGC   Doc 8   Filed 01/25/05   Entered 01/25/05 09:51:39   Desc Main
Document     Page 2 of 12

| | |
|---|---|
| Judge: | I said I expect she would agree to that and she said absolutely. |
| Hodges: | That at least gives us a chance to work something out with Mr..... Whereas if we get a 180-day bar, I suspect we won't have any opportunity... |
| Judge: | Is he working do you know? |
| Hodges: | Yes sir, he is and in fact part of the difficulty in at least one of the prior cases was his being out of town all the time. He has informed me that he has a job that keeps him in town and pays him essentially the same exact wages he was making while he was on the road. We have tried to reach him this morning. |
| Judge: | How often is he paid? I'm going to enter your in rem relief Ms. Pickett. |
| Pickett: | Thank you Judge. |
| Judge: | What's he paid do you know and how often? |
| Hodges: | Your Honor I don't. I think it's bi-weekly, but I really don't. I mean, we'll consent to the in rem and if you could continue the confirmation two weeks. |
| King: | Judge I don't know if there's any point in continuing the confirmation. We've never had a 341. He's paid $400 in this case which I think is what Mr. Hodges just mentioned. Prior to that he's only paid $2650 in the prior three cases since '01. We'd ask for the 180-day bar. I don't think he's shown anything that would indicate to us that he wants to go forward and make a good faith effort to make these cases work. He hasn't to this point. |
| Judge: | Has the 341 been continued? |
| King: | It was set twice, Judge. He hasn't appeared at either one. |
| Hodges: | I think Mr. Crawford's request was let's not reschedule the 341 until we see the status of the payments. There is supposed to be more money in by now. That's the bottom line. I do not remember the date of the last hearing Your Honor, but ... |
| Pickett: | June 8. |
| Hodges: | there was supposed to be more money in by now. |
| King: | The last 341 Judge was two months ago, May 5. That was the last scheduled date. |

3

| | |
|---|---|
| Judge: | When was it scheduled first? |
| King: | April 28 Judge. |
| Judge: | Okay. The only question I have in my mind is whether to bar him from refiling a case. I'm going to dismiss this one. I'm going to enter the order on Countrywide's motion for relief on the in rem and dismiss this case. Whether I institute the 180-day bar or not, I'm not sure. I need to go back and look at those other cases. In the meantime, you need to be in touch with him and let him know what's going on. Particularly with those mortgage payments. |
| Hodges: | Absolutely. |
| Pickett: | Thank you, Your Honor. |
| Hodges: | Thank you, Judge. |
| Judge: | Thanks. |

Unofficial Transcript, Hearing held July 6, 2004.

> In conformity with the above, the Court entered an order that read:
>
> Based on the representations of counsel and the pleadings, the motion for in rem relief from stay filed by Countrywide Home Loans, Inc. is granted by consent. This Order will serve to preclude the application of the automatic stay that arises upon the filing by the debtor of a subsequent case to any action taken by Countrywide Home Loans, Inc. to foreclose its mortgage in accordance with state law or to otherwise lawfully obtain possession of the property which is the subject of the mortgage.

Order, entered July 12, 2004.

On July 19, 2004, the debtor filed his Motion to Set Aside Dismissal seeking reinstatement of his case. On July 27, 2004, he filed an Amended Motion to Set Aside Dismissal. There was no opposition to reinstatement. On August 5, 2004, the Court entered an Order granting the debtor's Motion to Set Aside Dismissal.

Believing that it had relief from the stay, after the case was dismissed, Countywide foreclosed on the debtor's home.[1]

---

[1] The parties agree that the foreclosure occurred after the case was reinstated.

4

On August 23, 2004, the debtor filed his <u>Motion to Amend Order and Reimpose Automatic Stay</u>. That motion requested the Court to reinstate the case, stated that a foreclosure sale was to be held on August 24, 2004, and requested retroactive application of the Court's July 12 order on the motion to reinstate. Notwithstanding the urgency of the relief sought, according to the Certificate of Service attached to the <u>Motion to Amend Order and Reimpose Automatic Stay</u>, debtor's counsel neither called nor sent by facsimile a copy of the motion to the movant. And that failure occurred after counsel filed the motion on August 23 with a foreclosure scheduled <u>the next day on August 24</u>.[2]

After notice, a hearing was held on September 21, 2004. Appearing were David Hodges for the Debtor; and Charles King, the attorney for the Chapter 13 Trustee. The debtor's attorney represented to the Court that an adversary proceeding would be filed by the debtor against Countrywide. The hearing was continued to be set with the pretrial conference on the adversarial proceeding. On December 6, 2004, the debtor filed a <u>Complaint for Violation of Automatic Stay and to Set Aside a Foreclosure Sale</u>. Countrywide answered the complaint on December 28, 2004, and denied the allegations.

## II. Contentions

The creditor contends that in rem relief was effective when the current case was dismissed and was available to Countrywide even after the current case was reinstated. Countrywide concludes that either the automatic stay did not arise after the case was reinstated, or if it did, it did not apply to Countrywide.

The debtor contends that in rem relief was not effective because it would have applied only if the debtor filed a subsequent case. The debtor also contends that when the current case was reinstated, the automatic stay again became effective. The debtor concludes that because the automatic stay was in effect at the time of the foreclosure, that the foreclosure is void.

## III. Issue

The practical issue is what did the Court intend in its July 8, 2004, order granting in rem relief to the movant. There are legal issues that are dependant on this issue.

---

[2] Neither the debtor nor his attorney took any other action to stop the foreclosure. At the hearing on the instant matter, debtor's counsel represented that the debtor received the foreclosure notices and asked his counsel about them. Debtor's counsel represented that he told the debtor that there was nothing to worry about. Similarly, when the <u>Motion to Amend Order and Reimpose Automatic Stay</u> was filed, no immediate injunctive relief was requested to stop the foreclosure.

5

## IV. Conclusions of Law

### A. Standard of Review

Writing for the Court of Appeals of the Eleventh Circuit in Cave v. Singletary, 84 F.3d 1350 (11th Cir. 1996), Circuit Judge Phyllis A. Kravitch explained:

> The district court's interpretation of its own order is properly accorded deference on appeal when its interpretation is reasonable. See Commercial Union Ins. Co. v. Sepco Corp., 918 F.2d 920, 921 (11th Cir.1990) (citing Alabama Nursing Home Ass'n v. Harris, 617 F.2d 385, 388 (5th Cir.1980)). See also Matter of Chicago, Rock Island and Pacific R.R. Co., 865 F.2d 807, 810-11 (7th Cir.1988) ("We shall not reverse a district court's interpretation of its own order unless the record clearly shows an abuse of discretion. The district court is in the best position to interpret its own orders.") (citations and internal quotation marks omitted); Anderson v. Stephens, 875 F.2d 76, 80 n. 8 (4th Cir.1989) (appellate court must afford "the inherent deference due a district court when it construes its own order"); Michigan v. Allen Park, 954 F.2d 1201, 1213 (6th Cir.1992) ("[A]n appellate court should accord deference to a district court's construction of its own earlier orders, if that construction is reasonable.").

Id. at 1354-55.

Writing for the Court of Appeals for the Fourth Circuit in JTH Tax, Inc. v. H & R Block Eastern Tax, 359 F.3d 699 (4th Cir. 2004), Circuit Judge Roger L. Gregory, citing Cave, explains further:

> This argument, however, incorrectly assumes that district courts must employ dictionary definitions when construing their own orders. While dictionaries are undoubtedly useful tools of construction, there is no requirement that district courts adopt the definitions contained therein when construing the terms of their own orders. Rather, to sustain appellate review, district courts need only adopt a reasonable construction of the terms contained in their orders. Cave v. Singletary, 84 F.3d 1350, 1354 (11th Cir.1996)("The district court's interpretation of its own order is properly accorded deference on appeal when its interpretation is reasonable."); Michigan v. Allen Park, 954 F.2d 1201, 1213 (6th Cir.1992)("[A]n appellate court should accord deference to a district court's construction of its own earlier orders, if that construction is reasonable.").

Id. at 706.

Based on the above, the Court believes that it is in the best position to interpret its own order. And so long as its construction is reasonable, the Court may exercise its discretion.

## B. The Court's Interpretation of the July 8, 2004, Order

When this Court granted in rem relief, it intended to condition the stay in any <u>future</u> case filed by the debtor. If the Court's order was not clear to anyone but the Court, the Court apologizes. The Court acknowledges that the order was subject to another interpretation. That however was not the Court's intent. The intent was to grant in rem relief for future cases only.

The Court's thinking was that conditioning the stay under section 349 of the Bankruptcy Code was prospective relief.[3]

---

[3] Consider these cases. In re Graffy, 216 B.R. 888, 891 (Bankr. M.D.Fla. 1998)(where debtor filed his current and two prior Chapter 13 cases in effort to circumvent bankruptcy court orders regarding filing of his tax returns and to interrupt Internal Revenue Service collection efforts, debtor's voluntary dismissal of Chapter 13 case would be conditioned to bar debtor from filing any bankruptcy case in any jurisdiction which sought relief from any claim filed by IRS concerning debtor's tax obligations); In re Spear, 203 B.R. 349, 354 (Bankr. D. Mass. 1996)(debtor's voluntary dismissal of Chapter 13 case would be conditioned to preclude debtor from refiling another bankruptcy petition for 180 days because of debtor's repeated filings and dismissals, and repeated requests for continuances, without hope of successful reorganization, in order to obtain benefit of automatic stay, for purpose of forestalling foreclosure on condominium); In re Greenberg, 200 B.R. 763, 770 (Bankr. S.D.N.Y. 1996)(chapter 13 debtor-tenant-shareholder's motion to dismiss would be granted, but with provision that, if debtor filed another bankruptcy case, automatic stay would not apply to current state court litigation between debtor and co-operative apartment owner, or to co-op's right to foreclose its security interest or evict debtor); In re Dilley, 125 B.R. 189, 198 (Bankr. N.D. Ohio 1991)(where debtor failed to propose a confirmable plan for 14 months and to comply timely with court orders, resulting in unreasonable delay, debtor's voluntary dismissal of Chapter 13 case would be conditioned to bar debtor from filing any Chapter 11, 12, or 13 cases for a period of 12 months); In re Dyke, 58 B.R. 714, 718 (Bankr. N.D. Ill. 1986)(where debtors sought dismissal of first Chapter 13 case after four years into a confirmed plan, in anticipation of motions for relief from the stay for failure to make post-confirmation mortgage and car note payments, in order to file another Chapter 13 petition to invoke new automatic stay, to circumvent the sanctions imposed by § 109(f), and to change unpaid post-petition debts in the first case into pre-petition debts in the second case, and debtors in fact filed the second petition before first case was dismissed, debtor's voluntary dismissal of Chapter 13 case would be conditioned to prevent debtor's from filing another case for 6 months).

See also Frieouf v. United States (In re Frieouf), 938 F.2d 1099, 1105 (10th Cir. 1991) (bankruptcy court properly, upon dismissal of Chapter 11 case, denied debtor discharge of debts scheduled in dismissed case for a period of three years where debtor waited nine months before filing initial plan of reorganization, plan was not accompanied by disclosure statement,

7

---

failure to file disclosure statement continued for more than one year after bankruptcy court explicitly ordered filing of statement, subsequent plans for reorganization were submitted by debtor only after motions to dismiss were pending, and debtor failed to appear at hearing to show why case should not be dismissed with prejudice), cert. denied, 502 U.S. 1091 (1992); In re Narod, 138 B.R. 478, 483 (E.D. Pa. 1992)(fact that debtor had filed six bankruptcy proceedings on the eve of attempted foreclosure sales, and then voluntarily dismissed the proceedings before an order for relief could be entered on the mortgagee's behalf, constituted sufficient showing of "cause" for reopening of most recent case in order to impose sanctions and make dismissal subject to 180-day refiling bar); Leavitt v. Soto (In re Leavitt), 209 B.R. 935, 940 (9th Cir. BAP 1997)(where debtor filed Chapter 13 solely in attempt to defeat otherwise non-dischargeable judgment entered against him in state court litigation, while at the same time concealing information and assets and exaggerating expenses in attempt to justify plans which provided zero or three percent pay-outs on state court judgment debt, bankruptcy court properly dismissed Chapter 13 case with prejudice to debtor's ability to discharge his then-existing debts in any subsequent bankruptcy case).

      See also In re Robertson, 206 B.R. 826, 831 (Bankr. E.D. Va. 1996)(debtor's third successive Chapter 13 petition would be dismissed with prejudice to debtor's ability to again file for bankruptcy relief for period of 417 days, based on evidence that debtor was filing for Chapter 13 relief in order to delay payment of federal income tax debt and to gain leverage in settlement of ongoing tax dispute with the IRS, where 417 days was actual time that debtor had unreasonably delayed IRS in collection of tax debt because of serial Chapter 13 filings); Simmons v. Simmons (In re Simmons), 149 B.R. 586, 590 (Bankr. W.D. Mo. 1993)(debtor who had filed a previous Chapter 12 case and two previous Chapter 13 cases, all for the purpose of preventing foreclosure, would be enjoined, upon dismissal of present Chapter 13 case, from filing another petition under either Chapter 12 or Chapter 13 for a period of 180 days); In re Earl, 140 B.R. 728, 783 (Bankr. N.D. Ind. 1992)(debtor's fourth Chapter 13 case would be dismissed and debtor would be enjoined from filing bankruptcy for 6 months where fourth case was filed on eve of foreclosure after first two cases had been dismissed for failure to make plan payments and third case had been dismissed for failure to file any plan of reorganization, debtor had only paid her original mortgage obligation incurred on November 6, 1970, through December 1, 1979, when original petition was filed in 1984, there was an arrearage of 69 monthly installments, and a total arrearage of $12,784.15, and arrearage claim in fourth case was $31,720.00 for mortgage payments due from January 1, 1980, through August 1, 1991); In re Penz, 121 B.R. 602, 604 (Bankr. E.D. Okla. 1990)(debtors' Chapter 12 case would be dismissed with prejudice to the refiling by the debtors of any Chapter 11, 12, or 13 petition for 180 days, where debtors had filed three prior Chapter 12 and Chapter 7 petitions for purpose of delaying foreclosure); Shearson Lehman Hutton Mortgage Corp. v. Hundley (In re Hundley), 103 B.R. 768, 771 (Bankr. E.D. Va. 1989)(deed of trust holder was entitled to relief from stay for cause and debtor's Chapter 13 case would be dismissed, and debtor enjoined from filing another bankruptcy petition for a period of one year, where debtor had filed 8 bankruptcy petitions in a period of 5 years for the purpose of delaying foreclosure).

8

Similarly, granting in rem relief was intended to be prospective. Consider these cases.[4]

---

[4]<u>In re Keller</u>, 1996 WL 590877*2 (E.D. Pa., Oct. 10, 1996)(bankruptcy court properly dismissed chapter 12 case with prejudice and granted prospective relief from the automatic stay, where debtor filed a pro se chapter 11 case on November 21, 1996 for purpose of staying a foreclosure sale scheduled that day, that case was dismissed on December 12, 1995, the foreclosure sale was rescheduled for January 23, 1996, the debtor filed an emergency application with the state court to stay the sale and vacate the foreclosure judgment on January 19, 1996, the application was denied by the state court, the debtor then filed a pro se chapter 12 bankruptcy petition which was dismissed on March 4, 1996, the secured creditor then scheduled a third foreclosure sale for April 16, 1996, and the debtor filed another pro se chapter 12 petition on April 14, 1996); <u>Jefferson v. Mississippi Gulf Coast YMCA, Inc.</u>, 73 B.R. 179, 182 (S.D. Miss. 1986)(bankruptcy court did not err in holding that the automatic stay did not operate to bar foreclosure proceedings where an order was entered lifting the stay and allowing a sale to proceed in a previous bankruptcy involving the same debtors, the same creditors and the same property); <u>Norton v. Hoxie State Bank</u>, 61 B.R. 258, 261 (D. Kan. 1986)(where debtors filed chapter 13 case prior to dismissal of their previously filed chapter 11 case but after relief from the stay had been granted to secured creditor in the chapter 11 case, bankruptcy court properly provided in order dismissing chapter 11 case that the lift of the automatic stay granted to the secured creditor in the Chapter 11 case would remain in full force and effect in the Chapter 13 case); <u>Smith v. First Federal Savings and Loan Ass'n of Carnegie (In re Smith)</u>, 58 B.R. 603, 605 (W.D. Pa. 1986)(bankruptcy judge properly granted relief from the stay ex parte on day that debtors filed third bankruptcy petition, where petition was filed immediately prior to a scheduled foreclosure sale, debtors had filed two prior bankruptcy cases immediately prior to scheduled foreclosure sales, first bankruptcy case was dismissed for bad faith, second bankruptcy case was dismissed for failure to the necessary documents, and third filing was clear violation of section 109(f) so that the debtor had no standing to claim any bankruptcy relief and therefore had no right to the automatic stay achieved by mere filing).

See also <u>In re Yiman</u>, 214 B.R. 463, 467 (Bankr. D. Md. 1997)(where debtor or spouse had filed seven Chapter 13 petitions to prevent foreclosure sale of residence and not made a mortgage payment in five years, and plan filed by debtor was futile because he had insufficient income to make both the current mortgage payments and plan payments, bankruptcy court would create "equitable servitude" whereby filing of new bankruptcy petition by debtor or spouse within specified period would not extend automatic stay's protection to their residence and would not interfere with any foreclosure proceeding then pending or thereafter filed); <u>In re Hric</u>, 208 B.R. 21, 26 (Bankr. D.N.J. 1997)(prospective automatic stay relief was warranted where debtors' right to cure default in mortgage under section 1322 was terminated prior to filing of second chapter 13 case by foreclosure sale conducted pursuant to relief from stay granted in prior chapter 13 case, so that it would be an abuse of the bankruptcy process for the debtors or any purported successors in interest to delay their removal from the property by any future bankruptcy filings); <u>In re Greenberg</u>, 200 B.R. 763, 770 (Bankr. S.D.N.Y. 1996)(chapter 13 debtor-tenant-shareholder's motion to dismiss would be granted, but with provision that, if debtor filed another bankruptcy case, automatic stay would not apply to current state court litigation between debtor and co-operative apartment owner, or to co-op's right to foreclose its security interest or evict debtor); <u>In re Felberman</u>, 196 B.R. 678, 684 (Bankr. S.D.N.Y. 1995)

9

Certainly, as some of the cased cited above suggest, there is a legitimate argument that prospective relief could also relate to reinstatement of a case as well as a future case. Both are future events. In this case, that is not what the Court understood from the hearing and that is not what the Court intended when it entered an order granting in rem relief.

At the hearing on this matter the parties and the Court discussed several options. The Chapter 13 trustee sought to bar the debtor from filing another case for 180 days pursuant to section 109(g) of the Bankruptcy Code. The movant sought in rem relief. When the Court stated that it intended to grant the in rem relief but it would consider whether to grant the trustee's request, the Court was considering first the best way to protect Countrywide's interest if a subsequent case was filed. If in rem relief was allowed but the 180-day bar denied, Countrywide would be protected if another case was filed. If necessary, the debtor would have options as against other creditors.

As is its standard practice, in most orders the Court states its ruling then qualifies or explains that ruling. The first line of the July 8, 2004, order granted in rem relief. The remainder of that order qualified that relief. The qualification was that the order applied to the automatic stay that arises, "**upon the filing of the debtor of a subsequent case to any action taken by Countywide**...." Order, entered July 8, 2004 (emphasis added).

---

(prospective annulment of stay previously granted by bankruptcy court in dismissing third successive Chapter 13 case filed by debtor's husband was enforceable against wife in Chapter 13 case filed after the dismissal of her husband's third case, and one day before the fourth foreclosure sale scheduled by the secured creditor, even though debtor was not herself party to husband's earlier bankruptcy filings, where debtor and husband had defaulted on mortgage five years after it was executed, the last monthly payment made by them to the mortgagee was four and a half years prior to filing of wife's Chapter 13 case, debtor and husband were fifty-three months in arrears, and debtor's husband had filed three prior Chapter 13 cases on the eve of foreclosure sales within a span of 2 years, each of which had been dismissed); In re Jones, 1990 WL 300921*2 (Bankr. N.D. Ind., Sept. 13, 1990)(prospective relief from automatic stay in subsequently filed cases was warranted where debtor had filed 5 previous bankruptcy cases, each on the eve of foreclosure, and where order dismissing the fifth case specifically barred debtor from filing bankruptcy for period of one year); Abdul-Hasan v. Firemen's Fund Mortgage, Inc. In re Abdul-Hasan), 104 B.R. 263, 266 (Bankr. C.D. Cal. 1989)(order for relief from stay granted in prior Chapter 13 case, which by its terms was made effective in any bankruptcy case subsequently filed by the same debtor, relieved mortgagee of any responsibility to seek relief from automatic stay prior to holding of foreclosure sale after subsequent bankruptcy case was filed by debtor); Jefferson v. Mississippi Gulf Coast YMCA, Inc. (In re Jefferson), 59 B.R. 707, 709 (Bankr. S.D. Miss. 1986)(secured creditor was not prevented by automatic stay from foreclosing on debtor's property where bankruptcy court had previously terminated stay in connection with previous Chapter 13 case to allow foreclosure to proceed), aff'd 73 B.R. 179 (S.D. Miss. 1986).

There was no need to grant relief from the stay. The case was being dismissed. The Court specifically stated, and later ruled that in rem relief would be granted. The Court's intent was to grant that prospective relief. The Court and the litigants discussed whether the debtor would be prohibited from filing another bankruptcy case for 180 days. That discussion was in the same vein. What relief would be afforded the creditors if the debtor filed another case?

What then is the status of the legal issues in this case.

### V. The Legal Issues

### A. The Automatic Stay

The automatic stay was reinstated when the current case was reinstated.[5]

---

[5]The court in In re Hakim, 244 B.R. 820, 821-22 (Bkrtcy. N.D. Cal. 1999) explained:

As a general rule, whether the automatic stay is reinstated depends on whether the stay was in effect on dismissal of the case. In turn, the question of whether the stay was in effect depends on whether the stay terminated by operation of law.

In the Chapter 13 context, where a plan has been confirmed and the case is subsequently dismissed, the automatic stay is reinstated upon vacating the order of dismissal in order to afford the debtor the opportunity to complete plan payments and receive a discharge. Cases generally hold that an order vacating an order of dismissal of a Chapter 13 case restores the stay as if it had not been terminated at all pursuant to § 362(c). See Diviney v. NationsBank of Texas (In re Diviney), 225 B.R. 762 (10th Cir. BAP 1998). See also In re Nail, 195 B.R. 922, 931-32 (Bankr.N.D.Ala.1996) (holding that in a Chapter 13 case, the stay is automatically reimposed when the order of dismissal is vacated); In re Bennett, 135 B.R. 72 (Bankr.S.D.Ohio 1992) (assuming without discussion that the automatic stay is reimposed when an order of dismissal is vacated); In re Bellman Farms, 86 B.R. 1016, 1020 (Bankr.D.S.D.1988) (assuming without discussion that the automatic stay is reimposed when a dismissal order is vacated). But see Guerra v. Commissioner, 110 T.C. 271, 1998 WL 161009 (1998).

In Diviney, NationsBank repossessed a car after an order vacated dismissal of the case. The debtors filed an adversary motion alleging that the bank violated the automatic stay. Citing two tax court cases, the bank argued in part that the stay was irrevocably terminated when the case was dismissed. The Tenth Circuit Bankruptcy Appellate Panel rejected the argument holding that when an order of dismissal is vacated, all of its effects are vacated, including the termination of the automatic stay. The court noted that without the protection afforded by the automatic stay, the debtor's ability to comply with the confirmed plan would be in

11

Consequently, the automatic stay was in effect when the foreclosure occurred.

### B.  Did Countrywide Have Relief From the Stay When it Foreclosed?

Actions taken in violation of the stay are void.[6]  Because the stay was in effect when Countrywide conducted its foreclosure, if it did not have relief from the stay, the foreclosure is void and has no effect.

Based on the Court's interpretation of its order, the Court finds that Countrywide did not have relief from the stay when it foreclosed on the debtor's home.  Countrywide's relief was in rem relief if the debtor filed a subsequent case.  While that relief is still available, it has no immediate effect.  Therefore, Countrywide's foreclosure was in violation of the stay and the foreclosure is void.

### C.  The Debtor's Complaint

The fact that Countrywide did not have relief from the stay, and therefore, in a technical sense, may have violated the stay, without discussion, this Court finds that there is no evidence, and that it cannot believe that any evidence could be produced, that would demonstrate that the debtor would be entitled to recover for that violation. The Court will entertain a motion to dismiss the complaint from either party.

A separate order will be entered contemporaneously with the Memorandum Opinion.

| | |
|---|---|
| Dated:  January 25, 2005 | /s/Benjamin Cohen<br>BENJAMIN COHEN<br>United States Bankruptcy Judge |

BC:pb

---

jeopardy since creditors would be free to seize their collateral as well as non-exempt property. In re Diviney, 225 B.R. at 770.

See also this Court's opinion in In re Nail, 195 B.R. 922 (Bankr. N.D. Ala. 1996).

Id.

[6]"Actions taken in violation of the automatic stay are void and without effect." Borg-Warner Acceptance Corp. v. Hall, 685 F.2d 1306, 1308 (11th Cir. 1982).